UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARCO DAMON DUNCAN, Plaintiff | CIVIL DOCKET NO. 1:17-CV-1623-P |
| VERSUS | JUDGE DRELL |
| JOSE NUNEZ, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

MEMORANDUM ORDER

Before the Court is a Motion for Adverse Inference Sanction (Doc. 179) filed by *pro se* Plaintiff Marco Damon Duncan ("Duncan") (#37679-048). Duncan is an inmate in the custody of the Federal Bureau of Prisons incarcerated at the United States Penitentiary in Florence, Colorado.

Because Duncan fails to establish that there was destruction or alteration of video surveillance footage, or bad faith, by Defendants, Duncan's Motion for Adverse Inference Sanction (Doc. 179) is DENIED.

I.     Background

Duncan initiated this litigation pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1] (Docs. 1, 16, 20) alleging that he was subjected to excessive force when he was incarcerated at the United States Penitentiary in Pollock, Louisiana.

---

[1]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

Duncan seeks sanctions under Fed. R. Civ. P. 37(e) and under the Court's inherent authority to issue sanctions. (Docs. 179, 179-1). Duncan asserts Defendants failed to preserve electronically stored information ("ESI") or video surveillance footage from January 13, 2017: (1) from the receiving and discharge ("R&D") area of USP-Pollock; (2) from the B-2 housing unit; and (3) of Duncan's escort from the transportation van to the Special Housing Unit ("SHU"). (Doc. 179, p. 1). Duncan contends FBI Agent Olivia Alley ("Agent Alley") advised USP Pollock on January 13, 2017 of the need to preserve the footage of the R&D area. Id. Duncan also asserts that the only version of the video footage showing the incident in the B-2 housing unit was deliberately altered by prison officials. Id.

## II. Law and Analysis

Rule 37(e) provides sanctions against a party for the failure to preserve ESI. See Fed. R. Civ. P. 37(e) The rule covers circumstances in which ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). If a party is prejudiced by this loss, a court may order no greater measures necessary to cure the prejudice, and if "the party [responsible for the loss] acted with the intent to deprive another party of the information's use," a court may take adverse action against the party responsible for the loss. Fed. R. Civ. P. 37(e)(1)-(2).

Duncan argues that the incident occurred inside the B-2 housing unit at USP-Pollock, directly under a surveillance camera. (Doc. 179-1, p. 1). Duncan asserts he only received video footage from a surveillance camera over 30 feet away that was

altered by prison officials. Id. Duncan contends Defendants failed to preserve images of him from the January 13, 2017 incident from over 15 video surveillance cameras that were functioning. Id. Duncan contends that the incident in the B-2 housing unit resulted in him being criminally charged and that Defendants had a duty to preserve the video surveillance. (Doc. 179-2, p. 2). Duncan asserts Defendants failed to preserve relevant video surveillance and altered the only existing copy of video footage of the B-2 housing unit. Id.

Duncan contends that he was beaten and injured by Defendants next to the officer desk in the R&D area of USP-Pollock. (Doc. 179-1, p. 1). Duncan asserts there were surveillance cameras he personally observed in the R&D area that should have captured all or part of the incident. Id. Duncan argues that an hour after the beating Defendants were put on notice when Duncan told Agent Alley, SIS Lieutenant Michael Pierce, and Captain Barlett that he was beaten in the R&D area. Id. Duncan alleges prison officials lied to Agent Alley during her investigations and advised that no cameras were in the R&D area. (Doc. 179-2, p. 2).

Duncan alleges his escort from the transportation van to the SHU shower was recorded by handheld video camera. (Doc. 179-1, p. 2). Duncan asserts Defendant Morris personally witnessed that escort and the camera operator recording it. (Doc. 179-2, p. 3). Duncan contends BOP Policy requires video recording when the "Use of Force Team" is employed, and that the escort videotapes be maintained for a minimum of two and one-half years. (Doc. 179-2, p. 3). Duncan argues that the escort videotapes were destroyed before that time. (Doc. 179-2, p. 4). In support, Duncan

attached an excerpt of Agent Alley's testimony at a hearing on Duncan's Motion to Suppress in his criminal proceeding (1:17-cr-000106-02, Doc. 109) and an excerpt of BOP policy regarding "Documentation of Use of Force and Application of Restraints Incidents." (Doc. 179-3, pp. 1-38).

Agent Alley testified she spoke to Duncan and White on January 13, 2017 in the R&D holding cell. (Doc. 179-3, p. 2). Duncan declined to speak to her, but before she left Duncan stated he had been assaulted by BOP staff while in restraints. Id. She advised him that if he wanted to talk, she would have to advise him of his rights. (Doc. 179-3, p. 5). Agent Alley testified that after Duncan told her about what happened she inquired that day regarding any video that may be available to confirm or refute his allegation and was told there were none available. Id.

Agent Alley inquired about four times about whether there were more videos. Id. She testified that after the Assistant U.S. Attorney informed her that Duncan's defense attorney was asking about more videos, she immediately called BOP to inquire, specifically with the Special Investigative Services ("S.I.S.") department and videos in R&D. (Doc. 179-3, p. 6). She asked about any available video, including in the medical area. Id. She was told there was no other video. Id.

Agent Alley testified they have three videos: (1) a long video of the assault; (2) a short video of the assault; and (3) a video of Duncan going to the email system. (Doc. 179-3, pp. 6-7). Agent Alley testified that another video of the medical assessment of Duncan, taken off of a handheld video camera, was later produced. (Doc. 179-3, p. 7). Agent Alley was questioned about testimony that there were other

videos throughout the prison and whether there was any way to obtain them. (Doc. 179-3, p. 13). Agent Alley testified that if the videos are not saved and flagged at the time or shortly thereafter, the system just rewrites over them because it constantly records. (Doc. 179-3, pp. 13-14). Agent Alley testified that she asked for the R&D video. (Doc. 179-3, p. 15). She was initially told there was no video of the medical assessment in the nurses' station, but the video was received the day before her testimony. (Doc. 179-3, p. 16). Agent Alley further testified that there is no video footage that was taken during her interview of Duncan. (Doc. 179-3, p. 22).

Defendants argue there is "no proof that any evidence was destroyed, as there is no proof that video footage of the R&D area, other footage besides that provided of the B-2 housing unit, and video footage of the transportation to Oakdale, ever existed." (Doc. 208, p. 2). Defendants argue that Agent Alley's testimony does not support his allegation that any videos were destroyed. Id. Defendants state there was no camera in the R&D area where Duncan alleges he was assaulted. Id. Defendants submit that there were cameras in the holding cells in the R&D area, but not in the R&D area for privacy reasons because inmates are strip searched there. Id. Defendants further contend none of the named Defendants had any control over the video surveillance or footage, noting Morris's response to Interrogatories that S.I.S. operates and maintains the video surveillance and camera system. Id.

Defendants state that Duncan refused to answer questions at his deposition as to how the video footage at the B-2 housing unit was altered, and that no evidence shows this video footage was altered. (Doc. 208, p. 3). Defendants argue that the

transcripts of the suppression hearing and criminal trial explain the time delays on the footage of which Duncan complains. (Doc. 208, pp. 3-4). Defendants assert Duncan has viewed all available videos and that no more videos exist. (Doc. 208, p. 4).

Defendants produced excerpts from the hearing and trial transcripts showing that the ViconNet system runs slow by nine or ten minutes and that the clock is an internal clock that the facility has not been able to reset. (Doc. 208-1, pp. 2-3; Doc. 208-4, p. 1). The nine- or ten-minute gap does not delete any information from what is shown on the video. (Doc. 208-1, p. 3). Testimony established that no cameras were in R&D and that no video shows from where they left the unit and R&D. (Doc. 208-1, p. 4).

In general, spoliation of evidence "is the destruction or the significant and meaningful alteration of evidence." Guzman v. Jones, 804 F.3d 707, 713 (5th Cir. 2015) (citing Rimkus Consulting Grp., Inc. v. Cammarata, 688 F.Supp.2d 598, 612 (S.D. Tex. 2010)). The United States Court of Appeals for the Fifth Circuit permits "an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'" Guzman, 804 F.3d at 713 (citing Condrey v. SunTrust Bank of Georgia, 431 F.3d 191, 203 (5th Cir. 2005)). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." Guzman, 804 F.3d at 713 (citing Mathis v. John Morden Buick, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998)). Mere negligence is generally insufficient.

United States v. Rodriguez-Sanchez, 741 Fed.Appx. 214, 222 (citing Vick v. Texas Emp't Comm., 514 F.2d 734, 737 (5th Cir. 1975)).

Although Duncan establishes a delay in providing all video evidence in possession of Defendants, there is no evidence that Defendants destroyed or altered any video surveillance or footage. Additionally, although the evidence shows relatively little explanation for the delay in production of all requested video surveillance, there is no evidence Defendants intentionally or in bad faith deprived Duncan of video footage. At most, Duncan establishes negligence, not bad faith. Duncan's Motion for an Adverse Inference Sanction (Doc. 179) is therefore DENIED.

## III.   Conclusion

Because Duncan fails to establish that Defendants destroyed or altered video surveillance footage, or bad faith, Duncan's Motion for Adverse Inference Sanction (Doc. 179) is DENIED.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 12th day of November 2019.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE