(Rev. 5/1/13)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

BY_____MARCO DAMON DUNCAN #37679-048    CASE NO. 1:17-CV-01623 SEC P

VERSUS    JUDGE DRELL

JOSE NUNEZ ET AL    MAGISTRATE JUDGE PEREZ-MONTES

AMENDED
COMPLAINT
PRISONER CIVIL RIGHTS UNDER 42 U.S.C. § 1983
" JURY TRIAL DEMANDED "

I. **Previous Lawsuits**

   a. Have you begun any other lawsuit while incarcerated or detained in any facility?
   Yes [X]    No [ ]

   b. If your answer to the preceding question is "Yes," provide the following information.

      1. State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the county of parish):

         U.S. COURTHOUSE RENO, NV. / DISTRICT OF COLUMBIA / WESTERN

         DISTRICT OF LOUISIANA.

      2. Name the parties to the previous lawsuit(s):

         Plaintiffs: MARCO D. DUNCAN  -vs-
         Defendants: JUSTIN DILLARD, / DRUG ENFORCEMENT / JOSE NUNEZ
                     ET AL.           ADMINISTRATION ET AL.  ET AL.

      3. Docket number(s): UNKNOWN / 06-1032 (GK) / 1:17-cv-01442-DDD-JPM

      4. Date(s) on which each lawsuit was filed: YEAR 2005 / YEAR 2006 / DATE UNKNOWN, OCT. 26, 2017
         DATE UNKNOWN / DATE UNKNOWN

      5. Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:
         DISMISSED / DEFENDANTS GRANTED SUMMARY / VOLUNTARILY DISMISSED
         2005     / JUDGMENT MAY 30, 2007           / NOVEMBER 2017

   c. Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?
   Yes [X]    No [ ]

Page 1 of 4

*(Rev. 5/1/13)*

If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

U.S. COURTHOUSE IN RENO, NV. DISMISSED WITHOUT PREJUDICE. JUSTIN

DILLARD ET AL. FOR FAILURE TO STATE A CLAIM. CIVIL NO. UNKNOWN.

II. a. **Name of institution and address of current place of confinement:**

United States Penitentiary MAX, P.O. Box 8500, Florence, CO. 81226

b. Is there a prison grievance procedure in this institution?
Yes [x]   No [ ]

1. Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit? Yes [x]  No [ ]

   If "Yes," what is the Administrative Remedy Procedure number?

   900815-F1

2. If you did not file an administrative grievance, explain why you have not done so.

3. If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?

   EACH CLAIM RAISED IN THIS LAWSUIT WERE EXHAUSTED ON ALL FOUR

   LEVELS OF APPEAL. ( SEE ADMINISTRATIVE APPEALS ATTACHMENT B )

   Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

III. **Parties to Current Lawsuit:**

a. Name of Plaintiff: MARCO D. DUNCAN

(Rev. 5/1/13)

Address: _____

b. Defendant, JOSE NUNEZ _____, is employed as CAPTAIN _____ at USP POLLOCK _____.

Defendant, CHAD MORRIS _____, is employed as LIEUTENANT _____ at USP POLLOCK _____.

Defendant, BENJAMIN VALLE _____, is employed as DISCIPLINARY HEARING OFFICER at USP POLLOCK _____.

Additional defendants: DURRELL COTTONGIN, DEDRICK SHAVERS, AND M. Cordova ARE FEDERAL CORRECTIONAL OFFICERS AT USP POLLOCK. Miranda Bordelon IS A NURSE AT USP POLLOCK AND JOEL ALEXANDRE IS A DOCTOR AT FCI OAKDALE II.

IV. **Statement of Claim**

State the **FACTS** of your case. Specifically describe the involvement and actions of each named defendant. Include the names of all persons involved in the incident(s) or condition(s) giving rise to the lawsuit, and the dates upon which and the places where the incident(s) and/or condition(s) occurred. **YOU ARE REQUIRED TO SET FORTH ONLY FACTUAL ALLEGATIONS. YOU ARE NOT REQUIRED TO SET FORTH LEGAL THEORIES OR ARGUMENTS.**

( SEE ATTACHMENT A )

*(Rev. 5/1/13)*

V. **Relief**

State exactly what you want the court to provide to you or do for you. Make no legal arguments. Cite no cases or statutes.

COMPENSATORY DAMAGES OF $100,000 BOTH JOINTLY AND SEVERALLY.

PUNITIVE DAMAGES OF $20,000 FROM EACH DEFENDANT.

DEFENDANTS TO PAY ALL FEES AND COST FOR THIS LAWSUIT.

GRANT A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

GRANT OTHER JUST AND EQUITABLE RELIEF THIS COURT DEEMS NECESSARY.

VI. **Plaintiff's Declaration**

a. I understand that if I am transferred or released, I must apprise the Court of my address, and my failure to do so may result in this complaint being dismissed.

b. I understand that I may not proceed without prepayment of costs if I have filed three lawsuits and/or appeals that were dismissed on grounds that the action and/or appeal was frivolous or malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

c. If I am located in a prison participating in the Electronic Filing Pilot Program, I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this __9th__ day of __December__, 20__19__.

__37679-048__  
Prisoner no. (Louisiana Department of Corrections or Federal Bureau of Prisons)

__Marco Duncan__  
Signature of Plaintiff

**VERIFICATION**

I have read the foregoing complaint and all attachments and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Florence, CO.   on December 9th, 2019.

__Marco Duncan__  
MARCO D. DUNCAN

ATTACHMENT A-
STATEMENT OF CLAIM

1. On January 13, 2017 at approximately 9:35 am, inside the B-2 housing unit at USP Pollock, a verbal confrontation between the plaintiff and a correctional officer escalated into a physical altercation.

2. As a result of that altercation the plaintiff was pepper sprayed and handcuffed behind the back by responding officers. This resulted in no injuries to the plaintiff and he was escorted away without further incident.

3. While being escorted through the secured corridor, plaintiff was handcuffed behind the back and being restrained by defendant Cottongin and Shavers.

4. Defendant Cottongin was overly aggressive and stated "these dudes is some hoe's" "the place will be up and running by lunch" "bitches aint gone do shit." Plaintiff said nothing in response and continued to walk as directed.

5. Upon information and belief, inmates are normally taken to the medical facilities for pepper spray decomtamination and medical assessments. Plaintiff was taken to the Receiving and Discharge (R&D) area, which is a secluded area, that does not have proper eyewash and decontamination stations.

6. After entering R&D, plaintiff was met by defendant Acting Captain Nunez (Nunez) and Lt. Morris. Defendant Nunez instructed defendant Cottongin and Shavers to place the plaintiff against a cinder block wall.

7. Inmate Charles White was then escorted into R&D by other officers. Plaintiff asked inmate White "are you alright?" Plaintiff was then told to face the wall in a threatening manner, although plaintiff had not moved, and was still being restrained by defendants Cottongin and Shavers.

8. Defendant Nunez then initiated a frivolous line of questioning with plaintiff, in an attempt to manufacture a need to use physical force, where no legitimate need to use force existed.

9. Moments later plaintiff's head was slammed into the wall without warning or justification. A defendant then made a sexually ribald statement.

10. After a brief exchange of words, plaintiff's head and face were again wantonly slammed into the cinder wall by defendant DHO Valle, Cottongin,

and others, who also attempted some type of wrist lock on plaintiff. At all times plaintiff was cuffed behind the back, restrained and in no way resisting.

11. Plaintiff stated "ok so yall gonna beat me up and abuse me while I'm cuffed and cant defend myself." Defendant Nunez then stated "dump him."

12. Plaintiff's legs were kicked from under him while being forcefully and violently slammed to the ground by defendant Cottongin and Shavers.

13. Plaintiff landed face down on the ground knocking the wind from him, and causing injuries to the mouth and left shoulder. Plaintiff was unable to speak, breathe, or move.

14. Defendant Cottongin and Shavers then pinned plaintiff to the ground and began kneeling on plaintiff's upperback. In doing so plaintiff's air supply was temporarily cut off, causing extreme psychological and physical distress.

15. Defendant DHO Valle and possibly Cordova then began to either stand or kneel on the back of plaintiff's knees, causing further pain and injuries. Plaintiff was immobilized and made no attempt to resist in any way or form.

16. The defendants (collectively defendants) then ceased communicating verbally as defendant Nunez began silently, and with hand gestures, giving directions to coordinate and attack the plaintiff as he lay pinned down.

17. Upon information and belief, there were two additional officers present in R&D during that time, who also colluded with the defendants to disable surveillance cameras. Prison Officials have denied the existence of any surveillance video in relation to the incident, although there are multiple video cameras located throughout R&D and surrounding areas.

18. As plaintiff lay pinned and not resisting, defendant Nunez maliciously bashed plaintiff in the left side of the face and eye without any provocation.

19. Plaintiff's left eye was seriously injured and instantly swollen shut while blood began pouring from a deep gash. Plaintiff suffered excruciating pain and substantial loss of vision.

20. Defendant Shavers then rapidly struck the plaintiff several times in the left eye, ear, and face causing severe swelling. Plaintiff also suffered multiple laceration's, hematoma's, and additional eye trauma.

21. When plaintiff turned his face to the right, to avoid being hit,

defendant Cottongin then began punching the plaintiff in the right side of the face and eye causing cuts, hematoma's, and severe facial swelling.

22. Plaintiff became disoriented as his face and head were repeatedly punched and slammed into the ground by defendants Cottongin, Shavers, Cordova , and DHO Valle, who twisted plaintiff's limbs at unnatural angles.

23. Defendant DHO Valle repeated "dont resist" and "stop resisting" as he tried to rip plaintiff's hair out and twisting plaintiff's right leg. Plaintiff was in no way resisting and defendant Lt. Morris told DHO Valle "dont say that." DHO Valle caused permanent damages to plaintiff's right knee.

24. While forcefully smashing the plaintiff's face into the pool of blood beneath him, defendant Cottongin and Shavers concentrated their weight onto plaintiff's upperbody and back, affecting plaintiff's ability to breathe. Plaintiff was in extreme physical distress and began fearing for his life.

25. At no time during the events described in paragraphs 3 thru 24 did the plaintiff do anything to warrant or justify the use of any physical force. Plaintiff was compliant, handcuffed, restrained, and physically passive. The plaintiff did nothing that could be reasonably considered threatening.

26. At all times mentioned in para. 9 thru 24 each defendant was in very close proximity to the plaintiff and clearly observed and recognized the unjustified use of force by each other. Each defendant had reasonable and realistic opportunities to intervene, prevent, and stop the abuse, but did not.

27. Defendant Cottongin and Shavers then yanked the plaintiff to his feet by the handcuffs, causing cuts to plaintiff's wrists. Plaintiff's clothes and face were covered in blood as he was led to the shower area.

28. Plaintiff's hair and neck were then grabbed from behind. Lt. Morris began squeezing plaintiff's neck as he and Nunez forcefully held plaintiff's face in front of the spray of hot water. They both continued to wantonly grip plaintiff's neck and would not allow him to move his nose and mouth away, causing plaintiff extreme alarm and panic.

29. Plaintiff felt as though he were drowning and began to lose consciousness. Plaintiff repeatedly told the defendants "I cant breathe" and pled with them to "let me up." Lt. Morris repeated "in your eyes" while purposely holding plaintiff's nose and mouth directly in front of the water.

30. A defendant to the rear of the plaintiff then stated "dont resist" even though plaintiff was not resisting and nearly unconscious. A defendant officer standing behind the plaintiff then stated "now your fucked."

31. Immediately following, plaintiff felt something unknown being pressed against his buttocks by a defendant officer standing behind him. Plaintiff's pants were also pulled down without any justification for doing so.

32. Plaintiff then clenched his buttocks and let his body go limp to avoid being violated. Lt. Morris, with a sense of urgency stated "pull his pants up" several times. Defendant Cottongin, DHO Valle, and Cordova were standing behind the plaintiff at that time.

33. Plaintiff was then ordered to his knees and locked in the shower as the defendants threatened to "dump" him. After plaintiff was uncuffed, Lt. Morris took the plaintiff's MP3 player, mailing stamps, and bloody clothes.

34. After receiving new clothing plaintiff was handcuffed and moved to a holding cell, where an unknown officer began to video record the plaintiff.

35. The abuse and torment described in para. 28 thru 33 produced effects comparable to waterboarding and were akin to torture. The abuse was degrading, deliberate, and plaintiff suffered substantial mental trauma as a result.

36. During the misconduct mentioned in para. 28 thru 33 defendants were clearly attempting to destroy evidence and conceal the plaintiff's injuries.

37. Upon information and belief, blood is not normally rinsed thoroughly from an inmates clothing before the clothing are collected as evidence to be used in a criminal investigation.

38. At no time during the events described in para. 27 thru 33 did any of the defendants attempt to intervene and stop or prevent the abusive conduct they witnessed. Each has reasonable opportunities to intervene but did not.

39. About 40 minutes later plaintiff was briefly seen by medical staff who conducted a mere cursory examination of the plaintiff's obvious injuries, and were indifferent to plaintiff's serious medical needs. Nurse Bordelon was reluctant to provide any medical treatment, and failed to document or properly assess ALL of the plaintiff's obvious and not obvious injuries.

40. Nurse Bordelon then later colluded with the defendants and falsified the Inmate Injury Assessment Medical Report, to assist in the cover up of the unjustified use of force, and injuries to the plaintiff.

41. Nurse Bordelon falsely documented in the report that the plaintiff stated that his injuries occurred in the B-2 housing unit, that plaintiff's injuries were caused by a fight, and that the plaintiff only reported bleeding during the injury assessment. These blatant falsehoods were made in concert with the defendants and in furtherance of the conspiracy to use excessive force and cover it up.

42. Approximately 35 minutes later plaintiff was transported to FCI Oakdale and seen by Dr. Alexandre who conducted another cursory examination through a cell window. Both of plaintiff's eyes were either swollen shut or nearly shut. Dr. Alexandre clearly saw that plaintiff was severely injured, bleeding, and in pain.

43. Plaintiff verbally told Dr. Alexandre the full extent of his injuries. Plaintiff stated that his eye socket was broken and in need of x-rays, and that he was seeing double vision and spitting up blood from the nasal cavity. Plaintiff stated that he had a deep laceration inside the right cheek in need of stitches, and two puncture wounds. Plaintiff reported pain and swelling in the left ear and bruising, swelling, and abrasions on both knee caps, along with cuts on both wrists. Plaintiff reported severe pain and soreness in the left shoulder, right knee, right elbow, upperback, chest, neck, and face.

44. Dr. Alexandre stated that he would give the plaintiff a Tetnus Booster shot, pain medication, and bandages, but failed to do so.

45. On January 14, 2017 plaintiff was again seen through the cell window by Dr. Alexandre Plaintiff again detailed his injuries and the pain that he was suffering. Plaintiff was provided no help or treatment.

46. On January 15, 2017 plaintiff was seen by nurse Jofferon through the cell window and again made the same complaints. Plaintiff also reported seeing blood in his stool and spitting up dark red blood from the nasal cavity. Plaintiff was untreated and received nothing for his pain or injuries.

47. On January 19, 2017 plaintiff was evaluated by a Mid-level Practitioner for his inability to see out of the left eye. Plaintiff received no treatment.

48. On January 26, 2017 plaintiff received an optometry exam and was found to have severe swelling behind the left retina and at high risk of retina detachment. Plaintiff received to treatment.

49. On January 31, 2017 plaintiff had a follow-up exam with the optometrist and was told that his vision would likely stay blurry for a while but should get a little better, "not 100% though." Plaintiff received no treatment.

50. Over the following weeks and months the plaintiff continued to suffer in pain ranging from severe to excruciating. Plaintiff had head and facial injuries consistent with an eye orbital fracture and concussion, and made repeated requests for x-rays and medical attention.

51. On March 2, 2017 plaintiff was examined by Dr. Moody who stated that there was possibly ligament or tendon problems and that she does "hear popping in the right knee." Plaintiff was prescribed a steroid medication.

52. On June 14, 2017 plaintiff was given x-rays for his injuries and told days later that he had in fact suffered a eye orbital fracture. Dr. Moody then stated that there was no fracture. Plaintiff was placed on chronic care for injuries to the left shoulder and right knee.

53. Plaintiff continues to suffer pain caused by permanent damages to his shoulder and knee. Plaintiff has diminished vision and other ongoing issues with his left eye, and has permanent scars and skin discoloration around both eyes. Plaintiff did not have any of these injuries prior to being beaten.

54. The defendants conspired and subversively networked information with others to conceal the excessive force and abuse. Defendants failed to submit mandated (BP-E583) use of force reports, and omitted from their Administrative Reports and Memorandum, any mention or reference to the excessive force used against the plaintiff in the R&D area of USP Pollock on January 13, 2017.

55. Plaintiff has no pending criminal charges, disciplinary write-up's or conviction, and did not lose any good time as a result of the excessive force, abuse, or injuries alleged in this complaint.

56. The specific allegations of excessive force, abuse, and injuries to the plaintiff, alleged in this complaint, all occurred in the R&D area of USP Pollock on January 13, 2017. The factual basis for the pending criminal charges are temporally and conceptually distinct from claims alleged in this complaint.

57. Upon information and belief, there are video surveillance tapes in the exclusive control of the BOP, that will substantiate plaintiff's claims raised in this complaint.

58. Plaintiff has complied to the best of his ability with the courts Feb. 8th 2018 Memorandum Order and instructions to amend. Plaintiff has provided all requested documents stated in the Order. (see attachment C)

59. The defendants actions were revenge for plaintiff's earlier altercation with correctional officer in the B-2 housing area.

## CAUSES OF ACTION
### Count I

60. Plaintiff incorporates paragraphs 1 thru 59 as though they were stated fully herein.

61. Defendants Nunez, Morris, Valle, Cottongin, Shavers, and Cordova maliciously and sadistically beat, abused, and used excessive force against the plaintiff without provocation or any legitimate penological justification for doing so. The plaintiff was handcuffed behind the back and restrained at all times, and at no time did he resist. There was no realistic or credible threat to warrant the use of any degree of force. The defendants actions violated the plaintiff's rights under the Eighth Amendment to the United States Constitution, and caused the plaintiff pain, suffering, mental anguish, physical injuries, and humiliation.

### Count II

62. Plaintiff incorporates paragraphs 1 thru 59 as though they were stated fully herein.

63. At different stages during each act of using excessive force against the plaintiff, each defendant except Dr. Alexandre and Nurse Bordelon, witnessed the illegal actions of the other co-defendants in using said force. Each defendant clearly recognized the excessive force, and unwarranted nature of the force, and each had more than reasonable and realistic opportunities to intervene and stop it. In failing to correct the misconduct, each defendant violated the plaintiff's rights under the Eighth Amendment of the United States Constitution and causing the plaintiff physical injuries, mental anguish, pain, suffering, and anxiety.

## Count III

64. Plaintiff incorporates paragraphs 1 thru 59 as though they were stated fully herein.

65. The defendants reached an agreement on Jan. 13, 2017 to deprive the plaintiff of his constitutional rights, and to protect each other from liability. In furtherance of the conspiracy to use force and cover up, each defendant committed overt acts illustrating willful participation in the joint activity. After an earlier altercation in which the plaintiff was unhurt, plaintiff was then taken to a secluded area of the prison and severely beaten and tormented by the defendants. The defendants then conspired and colluded with others to destroy evidence and conceal the use of force. In doing so each defendant violated plaintiff's Eighth Amendment Constitutional rights, causing plaintiff physical injuries, mental anguish, pain, suffering, and humiliation.

## Count IV

66. Plaintiff incorporates paragraphs 1 thru 59 as though they were stated fully herein.

67. Defendant Alexandre and Bordelon failure to properly assess plaintiff's injuries, or provide timely examinations and treatment for his injuries, constitutes deliberate indifference to the plaintiff's serious medical needs. In violation of the Eighth Amendment to the United States Constitution and causing the plaintiff pain, suffering, mental anguish, and anxiety.

CERTIFICATE OF SERVICE

I hereby certify that on December 10th, 2019, at Florence, Colorado, copies of the above and foregoing were sent U.S. Mail postage paid to:

Cristina Walker
U.S. Attorney's Office
300 Fannin St., Suite 3201
Shreveport, LA. 71101-3068

MARCO DUNCAN
37679-048