c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARCO DAMON DUNCAN, Plaintiff | CIVIL ACTION NO. 1:17-CV-01623 |
| VERSUS | JUDGE DRELL |
| JOSE NUNEZ, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (ECF No. 210), filed by Defendant Miranda Bordelon ("Bordelon"). Bordelon seeks summary judgment as to *pro se* Plaintiff Marco Damon Duncan's ("Duncan's") claims against her. ECF No. 210-1 at 1. Duncan opposes. ECF No. 249.

Genuine issues of material fact remain as to whether Bordelon was deliberately indifferent to Duncan's serious medical needs or is entitled to qualified immunity. Bordelon's Motion for Summary Judgment (ECF No. 210) should be DENIED.

I.   Background

Duncan initiated this litigation pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*[1] (ECF Nos. 1, 16, 20).[2] Duncan alleges he was

---

[1] In *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

[2] Since the filing of Bordelon's motion (ECF No. 210), Duncan amended his Complaint. ECF No. 272. The allegations pertaining to Bordelon were identical. *Id.*

1

subjected to excessive force when he was incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock").  ECF No. 1.

On January 13, 2017, inside the B-2 housing unit at USP-Pollock, Duncan was involved in a physical altercation with a correctional officer.  ECF Nos. 20-1 at 1, 272 at 5.  Duncan alleges he sustained no physical injuries from that altercation but was pepper-sprayed and handcuffed by responding officers.  *Id.*  Duncan asserts he was not taken to the medical facilities for pepper-spray decontamination and medical assessment.  *Id.*  Duncan contends he was escorted to the Receiving and Discharge ("R&D") area – a secluded area.  *Id.*

Duncan asserts that officers slammed his head and face into the wall, and that he was slammed to the ground while handcuffed.  ECF Nos. 20-1 at 1-2, 272 at 5-6.  Duncan landed face down on the ground knocking the wind from him, causing injuries to his mouth and left shoulder.  ECF Nos. 20-1 at 2, 272 at 6.  Duncan further asserts Captain Jose Nunez ("Nunez") bashed him in the left side of the face and eye without provocation, causing a deep gash.  *Id.*  Duncan alleges Officer Dedrick Shavers ("Shavers") rapidly struck him several times in the left eye, ear, and face causing severe swelling, multiple lacerations, hematomas, and eye trauma.  *Id.*  Duncan contends Officer Durrell Cottongin ("Cottongin") also punched the right side of his face, causing injuries.  ECF Nos. 20-1 at 2-3, 272 at 7.

Duncan alleges Bordelon conducted a cursory examination of his obvious injuries and was indifferent to his serious medical needs.  ECF Nos. 20-1 at 4, 272 at 8.  Duncan asserts Bordelon was reluctant to provide any medical treatment and

2

failed to document or properly assess all his injuries. *Id.* Duncan alleges Bordelon colluded with Defendants and falsified the "Inmate Injury Assessment Medical Report," to assist in the cover-up of the unjustified use of force and resulting injuries. ECF Nos. 20-1 at 5, 272 at 9. Duncan contends Bordelon falsely documented that Duncan's injuries occurred in the B-2 housing unit, that his injuries were caused by a fight, and that he only reported bleeding during the injury assessment. *Id.*

Duncan alleges Bordelon's failure to properly assess his injuries and failure to provide timely examinations and treatment for his injuries constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. ECF Nos. 20-1 at 8, 272 at 12.

Bordelon now moves for summary judgment of all claims against her, asserting that she was not deliberately indifferent to Duncan's serious medical needs and that she is entitled to qualified immunity. ECF No. 210. Bordelon submits in support a Statement of Undisputed Material Facts (ECF No. 210-4) and portions of Duncan's medical records (ECF Nos. 210-2, 210-3).

Duncan opposes. ECF No. 249. He submits in support a Statement of Disputed Material Facts (ECF No. 249-1), prison and medical records (ECF No. 249-4), and Declaration (ECF No. 249).[3]

---

[3] Declarations and verified pleadings of a *pro se* prisoner that are dated and made on penalty of perjury constitute adequate summary judgment evidence. *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017). Here, Duncan submitted his declaration, made on penalty of perjury. ECF No. 249.

## II. Law and Analysis

### A. Standards governing summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[4]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *See Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

---

[4] Local rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

4

"When an officer invokes [qualified immunity], 'the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law.'" *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). A court must "still draw all inferences in the plaintiff's favor." *Taylor v. Stevens*, 946 F.3d 211, 217 (5th Cir. 2019) (citation omitted). But "plaintiff must produce evidence that presents a genuine issue of material fact that (1) the defendants' conduct amounts to a violation of the plaintiff's constitutional right; and (2) the defendants' actions were 'objectively unreasonable in light of clearly established law at the time of the conduct in question." *Estate of Pollard v. Hood Cnty., Tex.*, 579 Fed.Appx. 260, 264 (5th Cir. 2014) (per curiam) (quoting Cantrell v. City of Murphy, 666 F.3d 911, 922 (5th Cir. 2012), cert. denied, 133 S.Ct. 119 (2012)). If the plaintiff fails, the motion for summary judgment should be granted. *Estate of Pollard*, 579 Fed.Appx. at 264.

B. <u>Standards governing deliberate indifference.</u>

A federal prisoner may bring a *Bivens* action for an Eighth Amendment claim based on cruel and unusual punishment. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55, 198 L.Ed.2d 290 (2017) (citing *Carlson v. Green*, 446 U.S. 14, 19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with "deliberate indifference" to the serious medical needs of prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); see also *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Gobert v. Caldwell*, 463

5

F.3d 339, 345 & n.13 (5th Cir. 2006) (citations omitted). Deliberate indifference "is an extremely high standard to meet." *Gobert*, 463 F.3d at 346 (citation omitted).

A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health and safety" and disregards that risk. *Farmer*, 511 U.S. at 837. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind – deliberate indifference to a prisoner's constitutional rights – to be subject to § 1983 liability. *See Farmer*, 511 U.S. at 834. The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. Id.

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (citing *Domino v. Tex. Dep't of Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001)).

A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). But a decision of whether to provide additional medical treatment is a classic example of a matter left for medical judgment. *See Gobert*, 463 F.3d at 347; *Domino*, 239 F.3d at

6

756. "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

A prisoner's dissatisfaction with the care choices made by prison medical personnel does not, on its own, present a constitutional violation. *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citing *Gobert*, 463 F.3d at 346). Negligence – even gross negligence – does not implicate the Constitution and does not provide a basis for a § 1983 claim. *Farmer*, 511 U.S. at 836. ("[D]eliberate indifference entails something more than mere negligence."). Prisoners are not entitled to the "best medical care money can buy." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

> C. <u>Genuine issues of material fact preclude summary judgment in favor of Bordelon.</u>

Bordelon argues the uncontested facts establish appropriate medical care. ECF No. 210-1 at 1. Bordelon contends there was no deliberate indifference and that she is entitled to qualified immunity as her conduct did not violate any constitutional rights. *Id.* Bordelon seeks dismissal of all claims against her. *Id.*

Bordelon submits excerpts of Duncan's medical records (ECF Nos. 210-2 at 1-2, 210-3 at 1-7) and a Statement of Undisputed Material Facts (ECF No. 210-4 at 1-2). Duncan was housed at USP-Pollock on January 13, 2017. ECF Nos. 210-4 at 1-2, 249-1 at 1. It is undisputed that the medical assessment was videotaped. ECF Nos.

7

210-4 at 1, 249-1 at 2.[5] It is also undisputed that Duncan was transported to FCC-Oakdale. ECF Nos. 210-4 at 1-2, 249-1 at 2. Duncan disputes the remaining material facts through his verified pleadings (ECF No. 20), a Declaration (ECF No. 249) made under penalty of perjury, a Statement of Disputed Material Facts (ECF No. 249-1), and documentary evidence (ECF No. 249-4).

### 1. Genuine issues of material fact remain as to Duncan's *Bivens* claim.

Bordelon contends that to establish a *Bivens* claim, Duncan must allege his constitutional rights were violated by an individual staff member. ECF No. 210-1 at 4. Bordelon asserts Duncan must show she was deliberately indifferent to his serious medical needs. *Id.*

Bordelon argues Duncan cannot demonstrate she knew of and disregarded an excessive risk to his health. *Id.* at 5. Bordelon further argues there is no evidence of a risk and no evidence she disregarded that risk by "refus[ing] to treat him, ignor[ing] his complaints, intentionally treat[ing] him incorrectly, or engag[ing] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 5-6 (quoting *Domino*, 239 F.3d at 756).

Bordelon admits she assessed Duncan for injuries after an assault on a correctional officer on January 13, 2017. ECF No. 210-1 at 1. Bordelon further states that she completed Duncan's inmate injury assessment form (ECF No. 210-2), indicating a laceration over the left eye, hematoma to the right temple, a puncture

---

[5] Though Duncan does not dispute that his assessment was videotaped, he declares that additional medical assessments occurred and were not videotaped. ECF Nos. 249-1 at 2, 249 at 2-4.

wound, and bite marks inside the cheek. *Id.* at 2. Citing to the form (ECF No. 210-2), Bordelon asserts Duncan refused treatment for the lacerations. *Id.* at 6. This assessment was videotaped. ECF Nos. 210-1 at 2, 249 at 2-3, 292.

Bordelon states Duncan was transported to FCC-Oakdale where a "Clinical Encounter" took place. ECF No. 210-1 at 2. Pointing to Duncan's medical records (ECF No. 210-3), Bordelon notes that the entry indicates laceration and hematoma to the left eye and puncture wounds to the left arm, and that Duncan did not need pain medication. *Id.*

Bordelon denies ignoring his complaints and there was no indication of a serious medical need. ECF No. 210-1 at 6. Bordelon further argues that Duncan's disagreement with his medical treatment does not raise a viable deliberate indifference claim. *Id.* (citing *Domino*, 239 F.3d at 756). She contends Duncan offers no facts to suggest she was aware of a serious medical need and ignored that need to his detriment. *Id.* She also states that the facts suggest Duncan received prompt and adequate medical care. *Id.*

Duncan's assessment form (ECF No. 210-2) indicates Duncan was injured on January 13, 2017 at 0944 hours in the B2 housing unit. ECF No. 210-2 at 1. He reported for treatment at 1115 hours. *Id.* The patient signature line reflects "unavailable to sign." *Id.* Bordelon documented the following findings on examination: bleeding over left eye; bleeding left forearm; and hematoma right temple. *Id.* Bordelon's assessment indicated the following: laceration over left eye "1 cm"; laceration to left of left eye "1 cm x 2 cm"; puncture wound to left forearm "x 2";

9

hematoma right temple; and right inside cheek bite mark. *Id.* The video medical assessment shows the same verbal notations. ECF No. 292. Bordelon noted that she cleaned the wounds and covered them with band-aids. ECF No. 210-2 at 1. She further noted – and the video medical assessment shows – that Duncan refused suturing of his lacerations. ECF Nos. 210-2 at 1, 292. A medical treatment refusal form indicates Duncan refused treatment to suture the wound on his forehead to close and prevent infection, and it shows "refused to sign" on the patient signature line. ECF No. 210-2 at 2.

Bordelon also submits records showing Duncan's clinical encounter at FCC-Oakdale on January 13, 2017 at 1539 hours, performed by Dr. Joel Alexandre ("Dr. Alexandre") at the Special Housing Unit. ECF No. 210-3 at 1. He was first assessed by Nurse Brandon Byrd ("Byrd") at 1445 hours. *Id.* at 3-4. Byrd noted Duncan was involved in an altercation with staff at FCC-Pollock. *Id.* He documented the same injuries as Bordelon and noted the wounds were covered with band-aids with dried blood and no active bleeding. *Id.* Duncan reported stab wounds to the left forearm and complained of pain to the left eye and left forearm. *Id.*

Dr. Alexandre documented that Duncan was involved in a fight and was punched in the left eye. *Id.* at 1. He further noted Duncan stated he did not really need pain medication. *Id.* Dr. Alexandre's examination showed Duncan's left eye was swollen shut, but he was able to partially open his eye to read large print. *Id.* He noted Duncan's eyeball structure was intact to low suspicion for structural violation. *Id.* There was no significant restricted motion due to swelling. *Id.* Duncan was

10

advised to use water if needed to clean his face. *Id.* Dr. Alexandre's assessment indicated left eye trauma. *Id.* He prescribed Ibuprofen 800 milligram ("mg") once by mouth three times daily for ten days and Acetaminophen 325 mg, two tablets, every six hours as needed for ten days. *Id.* Duncan was to return to sick call if needed. *Id.*

Duncan argues that genuine issues of material fact preclude summary judgment on his deliberate indifference claim. ECF No. 249-3 at 1. Duncan disputes that he refused medical treatment, declaring that he was never presented with a refusal form or given the opportunity to even refuse to sign the form. ECF Nos. 249 at 4-5, 249-3 at 3-4. Duncan further argues that genuine issues of material fact remain as to whether Bordelon treated any of his serious injuries, whether she ignored his serious medical needs, and whether she prevented medical staff from treating his injuries. ECF No. 249-3 at 4.

In a declaration (ECF No. 249) made under penalty of perjury, Duncan attests that he was involved in a minor scuffle with Officer Steedley in the B2 housing unit on January 13, 2017. ECF No. 249 at 1-2. Duncan declares that he was uninjured and was then escorted to the prison R&D area where he was severely beaten and injured by correctional officers, while handcuffed and restrained. *Id.* at 2. Duncan states that one hour later, Bordelon, Nurse Parker, and Nurse Cornell came to the R&D area to conduct his medical assessment. *Id.* He states that officers made medical staff aware that force was used against him in R&D. *Id.*

Duncan attests he was being recorded by another camera prior to the medical assessment camera being turned on. *Id.* Duncan declares that Nunez told him to say

11

he was alright and did not need medical treatment when asked on video assessment. *Id.* He states this was captured on other video footage, as he was being recorded with another camera prior to the medical assessment. *Id.* Duncan declares that Bordelon heard Nunez's directive. *Id.*

Duncan attests that once the medical assessment was turned on Bordelon began to verbally assess his injuries, while Nurse Parker assessed the injuries on an unknown document. *Id.* In support, Duncan attaches a memorandum (ECF No. 249-4) from Bordelon dated January 13, 2017, stating that Nurse Parker assessed his injuries and sutures were needed to close the wounds to his face. ECF No. 249-4 at 1. The memorandum further states Duncan refused, that the refusal form was signed and witnessed, and that all wounds were cleansed and covered with band-aids. *Id.*

Duncan declares that Nunez was present in the holding cell during the entire video assessment. ECF No. 249 at 3. In support, Duncan attaches Defendants' Answers to Plaintiff's Third Request for Admissions (ECF No. 249-4 at 2-3) in which Defendants admit that Nunez was inside of the holding cell on January 13, 2017, while Duncan's medical assessment was being conducted. ECF No. 249-4 at 3. Duncan attests that as Bordelon was verbalizing Duncan's injuries for Nurse Parker, Nunez was making scowling faces and being physically imposing with his presence, clearly influencing Bordelon's assessment. ECF No. 249 at 3. Duncan states that when Bordelon mentions sutures for his facial lacerations, Nunez frowned and began

to shake his head. *Id.* Duncan declares he said he was alright fearing another assault. *Id.* Duncan attaches the medical assessment video in support. *Id.*[6]

Duncan attests Bordelon clearly saw multiple bleeding lacerations over his left eye, injury to his left eye orbital, severe trauma to his left eye, severe swelling to the left side of his face, swelling to the right side of his face, multiple hematomas, contusions, abrasions, puncture wounds, a deep cut inside of his right cheek, and a badly hurt right knee that he visibly had problems ambulating on. *Id.* Duncan declares he specifically told her it "hurt like hell" and was ignored by Bordelon. *Id.* Duncan attests that the video clearly shows Bordelon failed to treat any of those injuries. ECF Nos. 249 at 3, 292.

Duncan declares that after the video was turned off, Nurse Cornell told Bordelon that the lacerations were not going to stop bleeding and that he was going to glue them shut to stop the bleeding. ECF No. 249 at 3. Duncan further declares that Nurse Cornell moved to apply the glue and Bordelon prevented her from doing so. *Id.* He told Bordelon that his puncture wounds were burning, she applied a band-aid and walked away. *Id.* at 4. Duncan attests that, after the video medical assessment, he did not he refuse treatment for the lacerations over his left eye or for any of the other injuries observed and noted by Bordelon. *Id.* He further attests that he was never presented with a refusal form or given an opportunity to refuse to sign

---

[6] The Court directed Defendants to file under seal the video footage of Duncan's medical assessment. *See* ECF No. 282, 292.

one. *Id.* at 5.[7] Duncan declares he would not have signed had he been given the opportunity because he was not refusing medical treatment. *Id.*

Duncan attests that Bordelon was aware he was beaten in the R&D area by staff. *Id.* at 4. He denies telling her that his injuries were caused by a fight in the B2 housing unit. *Id.* at 4. He declares she never asked what his symptoms were and made false representations to cover up his beating by staff in R&D. *Id.* Duncan attaches Bordelon's discovery responses (ECF No. 249-4 at 8) in which she stated she did not have an independent recollection of the names of who told her where and how Duncan's injuries occurred on January 13, 2017. ECF No. 249-4 at 9.

Duncan declares Bordelon failed to document all his injuries during her medical assessment and did not order x-rays, MRI, or pain medication on January 13, 2017. *Id.* at 6. Duncan attests that days later he temporarily lost sight in his left eye while suffering severe pain. *Id.* Duncan attaches his request for a sick call on January 18, 2017 (ECF No. 249-4 at 10) and clinical encounter on January 18, 2017 (ECF No. 249-4 at 11), showing complaints that he could not see out of his left eye and sometimes spit up blood. ECF No. 249-4 at 10-11. Duncan reported 3/10 aching pain. *Id.* Physical exam showed left eye with swelling, intact extraocular movements, no diffuse redness, eyeball structurally intact, no proptosis of the left eye, no problems with eyeball mobility, and horizontal fields of vision intact. *Id.* at 12. Duncan was able to partially open his left eye on exam. *Id.* The recommended treatment included

---

[7] The medical assessment video does not show that Duncan was presented with a refusal form or that he refused to sign the form. ECF No. 292.

14

x-rays for left eye injury and follow-up for visual exam and status-post left eye contusion. *Id.* at 13.

Duncan had an optometry exam on January 26, 2017 for his complaints of vision problems. *Id.* at 14. The record documents that Duncan was in an altercation at another facility and the provider noted "unable to talk about specifics of trauma with inmate." *Id.* Duncan complained of diplopia, pain, redness, swelling, and mild light sensitivity. *Id.* Duncan reported 4/10 sharp left eye pain. *Id.* Exam revealed increased intraocular pressure of the left eye post injury. *Id.* at 15. Duncan was advised to return to clinic in four days for retinal evaluation of both eyes to rule out retinal detachment post trauma. *Id.* at 16. He was also recommended to have a Best Corrected Visual Acuity ("BCVA") with retinoscopy and continue taking Tylenol and Ibuprofen as directed by Dr. Alexandre. *Id.* The record also noted "[a]wait call out for left orbit x-ray." *Id.* at 19. Duncan attests he was advised by Dr. Moody on June 16, 2017 that "the x-ray is not showing anything abnormal where the left orbital fracture was." ECF No. 249 at 6.

Duncan declares he received an MRI for his right knee on February 10, 2019. *Id.* Duncan was informed that a consult was placed to see an orthopedic doctor for a tear in his right knee. ECF No. 249-4 at 37. Duncan submits records of his sick call visits for complaints of left shoulder and right knee pain since the incident. *Id.* at 249-4 at 23-37. Duncan attests that his knee injury and shoulder injury were ignored by Bordelon on January 13, 2017. ECF No. 249 at 6. Duncan attests that due to Bordelon failing to examine, assess, and treat or allow treatment for his injuries, he

15

is limited in his physical ability and restrictions were ordered by medical staff. *Id.* Duncan attaches copies of physical limitations and restrictions dated June 16, 2017 and April 12, 2018. ECF No. 249-4 at 35-36.

Duncan attests that Bordelon conducted his medical assessment and was aware he had severe pain in his knee and serious injuries to his face and eye. ECF Nos. 249 at 2-3, 249-3 at 6. Duncan further argues the facts and evidence are clear that Bordelon failed to treat any of the injuries recognized in the video medical assessment. ECF No. 249-3 at 6. Duncan asserts the disputed facts show Bordelon ignored his knee complaints despite his verbal complaints. *Id.* Duncan also raised a genuine issue of material fact as to whether he refused treatment and as to the validity of the refusal form. ECF No. 249.

Viewing the evidence in a light most favorable to the non-movant, Duncan has satisfied the subjective component test for deliberate indifference through summary judgment evidence that Bordelon ignored his complaints for medical treatment and refused to treat him. *See e.g. Taghipour v. Chastine*, 43 F.3d 669 (5th Cir. 1994) (per curiam) (vacating the district court's dismissal and remanding for additional proceedings where it was not readily apparent that delays in providing medical care for inmate's eye injury were not deliberate indifference).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). A court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in

that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Based on the facts and video evidence set forth, it remains possible that a reasonable jury could find that Bordelon was aware of facts from which she could infer a substantial risk of harm to Duncan that she drew in reference and thus, that she was deliberately indifferent to his medical needs. Duncan establishes through competent summary judgment evidence genuine issues of material fact as to his *Bivens* claim.

> 2. <u>Genuine issues of material fact remain as to whether Bordelon is entitled to qualified immunity.</u>

Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *See also Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). A court has the discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson,* 555 U.S. at 236; *see also Thompson v. Crnkovich*, 788 Fed.Appx. 258, 260 (5th Cir. 2019).

Bordelon argues she did not violate Duncan's constitutional rights and is entitled to qualified immunity. ECF No. 210-1 at 6-7. As detailed above, Duncan points to facts which, viewed in his favor, create a genuine issue of material fact that Bordelon violated the Eighth Amendment's prohibition against cruel and unusual punishment. For the same reasons, genuine issues of material fact remain as to Bordelon's qualified immunity defense.

### III. Conclusion

Because genuine issues of material fact remain as to whether Bordelon was deliberately indifferent to Duncan's serious medical needs or is entitled to qualified immunity; IT IS RECOMMENDED that Bordelon's Motion for Summary Judgment (ECF No. 210) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 25th day of September 2020.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE